Thank you. Good morning, your honors. May it please the court. My name is Ellen Phillips. I'm here on behalf of the appellant, Xavier Zamora. I would like to reserve two minutes for rebuttal. The Juvenile Delinquency Act limits federal jurisdiction over juvenile offenders, recognizing the longstanding policy that state courts are better equipped for handling the treatment and rehabilitation of juveniles. Thus, only under unique circumstances can those cases be tried in federal court. Under the JDA, it requires that the government certify both that there is an underlying federal crime of violence and that there is a substantial federal interest sufficient to warrant the exercise of federal jurisdiction. The certification here, however, didn't do that. Instead, it collapsed that inquiry and certified that there was a federal crime of violence, and so therefore, there was a substantial federal interest. But that's not enough under the statute. And aside from that facial deficiency, there is actually no substantial federal interest here. This court can review that question rather than leaving it to the unfettered discretion of the government, consistent with the purpose of the JDA to limit a prosecutor's discretion in juvenile cases. Most of the cases out there have gone against the position that you're advocating. And one of the underlying themes is that, you know, how a federal court would evaluate the substantiality certification, and what elements, you know, would factor into that and the like. You know, this case involved the murder of a postal carrier. You know, that seems like it might, to some prosecutors, be substantial, maybe not to others. But, you know, let's just say it's a priority of the District of New Mexico to prosecute murders of federal workers, just a categorical rule. And, you know, that's just the priority of the U.S. Attorney or the, you know, Attorney General of the United States. Wouldn't we defer even to a blanket determination of substantiality? And if not, you know, how do we decide? What's our judicial review look like? Sure. So beginning with your first point about the lack of standard in the statute, that shouldn't preclude judicial review here. It's true that the statute does not set forth specific things that the court should consider when evaluating whether there's a substantial federal interest. But courts are fully equipped to make that determination and are used to making those nebulous standard determinations, such as whether something is reasonable. And further, the legislative history from the Senate report in 1984 does provide some standards. It goes to the evaluation of whether the facts and circumstances of the case give rise to special federal concerns. As for your point that the Attorney General could make a blanket determination that there are special federal concerns for the murder of a postal worker, I'll note first that the certification here didn't actually say that. But even if there had been some sort of blanket certification, I don't, I think you would still have to look to the facts and circumstances of the specific case. Because I think we could imagine a situation where even though it may meet the elements of the crime, it's not necessarily a substantial federal interest. We could consider, for instance, if there was a domestic dispute. A woman's husband just so happens to be a postal worker, and she decides that she's had enough and just decides to kill him. That wasn't motivated by any federal concerns whatsoever, and so I don't think in that situation there would be a substantial federal interest. You might have a U.S. attorney that says, yeah, we need to crack down on these types of crimes. There is a, you know, I think part of the statute says if the district's unwilling or unable to prosecute these types of crimes, that's a reason also. But, you know, why couldn't just, it could just be a pure policy preference that certain crimes are going to get federal attention, and why wouldn't we defer to that? Because I don't think that's consistent with the text and the purpose of the statute. The Congress currently sort of certainly could have enumerated specific crimes that would always qualify for prosecution in federal court under the JDA, but it didn't do that. Instead, it recognized that while some crimes may be proper in federal court, not all federal crimes of violence will be, and so there has to be something extra on top of that. If we were to get to the merits, would we, I mean, you've got an admission to the plea agreement that he murdered the postal service letter carrier while engaged in and on account of the performance of his official duties. I mean, that seems to be significant in determining whether we're dealing with a crime of federal interest. Yes, there is that admission, Your Honor, but, and we don't dispute that admission, but the point here is that even if we admit the facts for purposes of the underlying elements of the offense, the question of subject matter jurisdiction and whether there's a substantial federal interest is a separate inquiry, and this court can look to the facts to determine whether whether there actually is a substantial federal interest. Including that fact? Including the fact of the admission? Yes. Yes, but further, Your Honor, this court doesn't have to make that determination. It may be more appropriate to remand to the district court to make a factual determination as to whether there is actually a substantial federal interest here. And if I may also discuss the facial argument, and that's that the text of the certification here did not comply with the requirements of the JDA. So the JDA requires two distinct certifications, and that's that there's a federal crime of violence and a substantial federal interest. This latter requirement would be entirely meaningless if the first finding alone sufficed, and that would contravene the basic interpretive principle that all words and provisions be given meaning. Of course, all federal crimes invoke a federal interest, but the statute specifically requires that there be a certification of a substantial federal interest. It should be separate and distinct from whether there's an underlying federal crime of violence. You know, some of the cases have looked at the other parts of 5032 that do provide for judicial review and conclude that the omission here suggests that Congress did not envision that there would be judicial review of this particular provision. Explain your response to that. Yes, Your Honor. My response is that that would go against the Supreme Court's instruction in a strong presumption that Congress intends judicial review, even in the absence of an express provision delegating judicial review. Well, that's interpreting the Administrative Procedures Act, right? Actually, the Lamonio case is the Westfall Act, which is where the Attorney General sort of... Both of those have a specific provision for judicial review, right? The Westfall Act does not, Your Honor, and that was something that the Court noted in Lamonio, that there is a presumption that Congress intends judicial review of executive action unless there is something in the statute saying otherwise. And of course, here there's nothing in the statute precluding judicial review. Returning back to the facial point briefly, the certification here just didn't meet the standards of the JDA. Instead of saying that there is a federal crime of violence and adding an additional certification that there is a substantial federal interest, it instead said that there was a federal crime of violence, so therefore there is a substantial federal interest. It thus plainly specified what the basis for its substantial federal interest conclusion was, and that is that there's the mere fact of a crime of violence that's been charged. If we agree with your position and we're going to... And remand it back to the District Court, what instruction should we give the District Court on how to determine substantiality? Well, if you agree with me on the first point, then this case should be dismissed for lack of subject matter jurisdiction. It would not be subject to a substantiality review because the certification would be just technically deficient. But if you disagreed with me on that point and the second point that it should be subject to a substantiality review, the District Court should be instructed to consider the facts and circumstances of the case to consider whether it gives rise to special federal concerns. And what constitutes special? Or, you know, give some examples of cases that... I mean, you gave me, I think, a case of one that would flunk substantiality, but, you know, what would be the standard of review? I think, for instance, in a case involving a murder of a federal officer, you would look to whether the defendant was motivated by federal concerns, whether it was, for instance, an assassination of a federal officer, whether it was intending to interfere with federal interests. And here there's just simply no evidence of that. And one other point I'd like to respond to, the government argues that the substantiality certification is not subject to review because it falls within the realm of general prosecutorial discretion. But that argument overlooks the explicit purpose of the JDA, which is to limit federal adjudication of juvenile offenses. So even if prosecutorial discretion is generally unreviewable, Congress can certainly alter that presumption, which it did here in the requiring a certification. Congress could have extended the same discretion as exists in adult cases, but it didn't do so, and instead included the certification requirement. And that requirement would be entirely toothless if there was no sort of judicial review whatsoever. Moreover, Your Honor, even the Supreme Court has held that prosecutorial discretion is not unfettered. For instance, an indictment is at least reviewed by a grand jury, and an information is always reviewed for probable cause. And so here Congress added an additional level of review for juvenile offenses, which is the certification requirement. And if there are no further questions, I'll reserve the rest for rebuttal. Thank you. Good morning, Your Honors, counsel, and please the Court. My name is Fred Federici. I'm an assistant United States attorney from the District of New Mexico. It is my privilege and honor this morning to address you today on behalf of the United States. Your Honors, we see at least four fatal flaws in the defendant's arguments that I'd like to very briefly summarize for the Court at the outset. First, the defendant is wrong on the facts because he misreads the plain language of the U.S. attorney's certification. By ignoring paragraph one of the certification, the defendant argues that the U.S. attorney certified that every federal crime of violence amounts to a substantial federal interest. But the U.S. attorney plainly only that the crimes charged in paragraph one of the certification, which included the murder of a federal employee, amounted to a substantial federal interest. In fact, it couldn't be any clearer from the fourth paragraph of the certification that the U.S. attorney was only certifying the crimes with which the defendant was charged because that paragraph only certifies that there's a substantial federal interest in, quote, each enumerated charge, close quote, which is a reference to the three paragraphs above it. So the four corners of this certification say nothing about any other crime not mentioned within the certification. It's an entirely unfair reading of the plain language of the certification the defendant's positioned today. Well, the subsection two of the first paragraph is pretty broad. You know, you've got the subsection one, which is murder of an employee of the United States, but then sub and using and carrying a firearm during and retaliation to a crime of violence, possessing a firearm and furtherance. I mean, that's those are pretty broad, aren't they? Well, there's specific crimes with which the defendant was charged. So what I guess all I'm saying, Your Honor, is that whatever those crimes are, that's all that the U.S. attorney was referring to in paragraph four of the certification. And the position that the defense is taking is that he was referring to every federal crime of violence in the U.S. Code. That's plainly not the case. And even accepting that, what I'm asking you is, if you look at the crimes in subsection two of the first paragraph, those are pretty broad to say there's a federal interest in all of those. Oh, I'm sorry. I misunderstood the court's question originally. Certainly, the U.S. attorney certified that each of the enumerated charges constituted a substantial federal interest. We would argue that that starts with the murder of a federal employee, which would be the lead charge. 924C obviously means that the defendant used a crime during the commission of that crime of violence. And the 922X crime just says that a juvenile illegally possessed that gun. But to Your Honor's point, yes, that's true. He did certify all three of those charges. Therefore, there is a substantial federal interest in each enumerated charge to warrant the exercise of federal jurisdiction. And while it may be, you know, you could argue that it's somewhat obvious if you murder an employee of the United States that there's a federal interest there, although I understand the defense would say that's even limited. The others seem quite broad. They're certainly bigger, less serious offenses, but they still fall within the scope of the offenses that Section 5032 allows to be certified as a substantial federal interest. Apologize, I have something in my throat. The second fatal flaw for the defendant, Your Honor, is that he's wrong on the law because he misreads the plain language of Section 5032. And on page 14 of his opening brief, the defendant argues that the U.S. attorney failed to certify a substantial federal interest beyond the crimes with which the defendant was charged. We agree with that. That's true. And I think that this header shows that at least in that portion of the defendant's brief, even he understands that that's all that the U.S. attorney was certifying in this certification. And why is that? Because the plain language of Section 5032 explicitly directs the U.S. attorney to base this certification upon the case or offense charged. Plainly and simply, that's what happens here. And that's all the U.S. attorney is directed to do under Section 5032. And the portion I'm talking about, Your Honors, is the portion of the statute that says that the attorney general was directed to certify, quote, there is a substantial federal interest in the case or the offense to warrant the exercise of federal jurisdiction. Nothing more. Well, the question is whether this court can review the quality of the certification. And most of the other cases have said it's a rubber stamp. We're going to defer to the attorney general on that. But at least in the Fourth Circuit, the court said we can do this. We can review the substantial federal interest. And the statute contains those words. And to a large extent, your position is that we ignore those words, or at least they're not eligible for judicial review. But in subject matter jurisdiction, don't we have to look at whether the attorney general has, in fact, a substantial federal interest? And don't we have to review substantiality as part of assuring ourselves that the federal courts have jurisdiction here? Judge Timkovich, I appreciate your question because it leads right to my next point. Number three? Number three, the defendant is again wrong on the law. And here's why. First and foremost, the courts already alluded to it. But the First, the Second, the Third, the Fifth, the Sixth, the Seventh, the Eighth, the Ninth, the Eleventh, and the D.C. Courts of Appeals have all resoundingly rejected the interpretation that the court brings, that the defendant is urging upon this court today. And I would say that the defendant's appeal raises a basic statutory construction issue that Your Honor has already alluded to. But he has not one word to say in his briefs about the canon of statutory construction that the majority of courts have found to apply and be controlling. And that is the construction that where Congress includes particular language in one section of the statute, such as providing for a hearing and six enumerated separate factors in the transfer proceeding under Section 5032, but omits it in another section of the same act, such as at the certification stage of Section 5032, that's generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion. And there's nothing to say about that there. And I will point out that while the Court's correct that there's, that the Fourth Circuit stands alone amongst the other circuits, the defendant in the Fourth Circuit case wasn't even able to convince all the judges on that panel that he was correct. Chief Judge Wilkerson concurred in the result, but effectively dissented to the defendant's argument. And the first thing that he cited was the canon of construction I've just discussed. And he basically eviscerated the defendant's argument and laid out the roadmap that every court of appeals that has looked at it since has followed. The other reason, I think the majority in that case were applying a presumption of judicial review, like on the Lamonia case that she mentioned. And there's also a presumption that state crimes will be committed in state court, a federalism type of evaluation. So there's some competing canons, it seems, at stake here. Well, I would grab the Lamogna case as the one that the panel judges grabbed onto in the Fourth Circuit. That case is readily distinguishable. I think Judge McHugh was alluding to it. It's the Westfall Act. What the Supreme Court tells us in that case is that they had two reasons for distinguishing, for finding the way they did in Lamogna. The first was, and that was whether a U.S. attorney's scope of employment certification under the FTCA could be subject to judicial review. The Supreme Court said yes in that instance because they said, one, the Attorney General herself was urging the Supreme Court to find that judicial review applied because she recognized that the U.S. attorney in that situation could be conflicted in terms of that certification. It allows the, by making the certification, the U.S. attorneys would be able to avoid any litigation from the agent who's not scoped. And the second reason that they turned on that's, I think, most important here is that the Supreme Court in Lamogna said that that involved a situation where the Attorney General's certification was conclusive or dispositive of the entire case. And that's where all the other courts of appeals that have examined Lamogna has said, this is a different situation. The certification under 5032 is just the beginning of the case, not the end. And I would also point out why the defendant is wrong on the law. The losing interpretation that the defendant wants the courts to adopt reads language into the statute that doesn't exist. It contains no specific criteria, as Your Honor has talked about this morning, for judges to apply. And it fails to respect prosecutorial judgments that lie at the core of the executive rather than the judicial branch of government. And that's, those are the other pieces of the roadmap that Judge Wilkerson sets out in his, what I'm going to call it, dissent, even though it was a concurring opinion in the Fourth Circuit. If we disagree with you, what do you think the factors of the substantiality analysis should look like? Well, the only factors that seem, again, I grab on to Judge Wilkerson's concurring opinion. He talked about the, he made reference to the U.S. Attorney's Manual and set forth. I know, but the majority in that case, you know, they did. You know, they reviewed the certification. They, to a limited degree, I suppose they did. They looked at the legislative history of the carjacking statute and they said, it seems to be that this is an important statute because there's some legislative history here and there's a heavy punishment. I would point out that the other thing that the majority did in that case is that they identified the assaults upon and the murder of federal officials as being two examples of where substantial federal interests would lie. So that was more or less the extent of their review. I'm just suggesting that, you know, we can do it. I mean, if we made you go back and justify it, you'd say it's a post carrier during the performance of his duties. Well, Your Honor, I think I can. They probably went on that. I don't know, but that has an aura of substantiality. I would, I guess I'd grab on to the defendant's word that was used this morning, is that it's a nebulous standard. I don't know. Most judges aren't anxious to jump into nebulous. So is the crime of violence.  Reasonable. We've gotten so much guidance on crime of violence, though, Judge. I would, I would jump to one last fourth point, just so I know you're in suspense wondering what that might be. But our position is that the defendant is again wrong on the facts by arguing that the government somehow lacks a substantial federal interest in prosecuting the murder of a federal employee. The statutes under which the defendant was charged are offenses that lie at the heart of federal concerns. It's inconceivable to me to suggest that the government does not have a substantial and abiding interest in protecting its employees from being murdered on the job. The government cannot function, cannot perform any function without its employees. And again, even the Fourth Circuit case that the defendant is tied his whole case around relies on or describes assaults upon and the assassination of federal officials as examples of offenses that give rise to a substantial federal interest. Would it matter if the federal employee is acting outside the scope of his duties and in fact, contrary to the directives of the guidance from the Postal Service for the performance of his duty? Your Honor, I think that where that, where the government and the defendant would join issue on that matter is if you believe that that's not the case, it's an element of the crime, whether he was engaged in or acting on account of the performance of his duties, that's challenged at a trial. This defendant opted to plead guilty and admit that element of the crime. So I don't think it would come within the scope of what the court would review as a matter on the front end in terms of a certification. One, because review doesn't apply according to every other court that's looked at it. But two, because it's, you know, in the same way the court wouldn't decide whether or not the defendant was acting in self-defense. And I see my time has expired. I just wanted to ask the same question that I asked Ms. Philipson. You know, let's say the District of New Mexico, the U.S. Attorney, is going to prosecute all juvenile sex assaults in federal court. You know, even garden variety types of misconduct. Those are going to, you know, my priority is to elevate all sex crimes to federal court. Would that pass muster? Would there be a substantial federal interest in those circumstances? I think it would for all the reasons we've described before. The Department of Justice always has a strategic plan. Each U.S. Attorney's office has an individual strategic plan. If we, for example, see a situation where suddenly we've got youth gangs out there carjacking, we certainly might adopt a zero tolerance policy for a period of time. And that's exactly the types of factors that Judge Wilkerson and the Fourth Circuit said belong to the prosecution to decide. And I would end with, of course, obviously, the court understands this, but that's not this case. But, you know, this case is just as to the individual factors that were identified in this particular certification. Thank you, counsel. Ms. Phillips, you have a couple minutes. Your Honors, I would like to start with the point that was made regarding distinguishing the Lamonio case. My friend on the other side made two points to distinguish that case. The first is that the Attorney General here isn't urging review. And my response to that is that that's completely irrelevant. The Supreme Court in the Bromski case, which is cited in our reply brief, recognized that the government's position on statutory interpretation is irrelevant to how the statute is actually determined. And the second point he made was that in Lamonio, it was conclusive or of the case, dispositive of it. And I think that the certification here is even more dispositive than it was in Lamonio. In Lamonio, the outcome of the certification was just that the United States would assume the role of the defendant there. And the outcome of the certification here is whether there's jurisdiction at all, whether there can even be a case in federal court. So those distinguishing factors completely fall apart under review. I'd also like to respond to the government's argument regarding the text of the certification. To be clear, we're not arguing that the certification is any broader than it is. But if you look at the text of the certification, it admits that it's each enumerated charge that is the basis for the substantial federal interest. It is very plain. Paragraph one sets forth merely that the offenses occurred before Mr. Zamora was 18, which is required under the JDA. Paragraphs two and three then set forth what the charges are. It sets forth that two of them are federal crimes of violence and that one is a federal crime enumerated under the U.S. Code. And I'll note also that the 922X crime is also one that's enumerated in the JDA as a viable predicate for jurisdiction. So it then concludes that because these crimes are either a federal crime of violence or a federal crime enumerated in the U.S. Code, then therefore there is a substantial federal interest in each enumerated charge. And that completely collapses the inquiry that's required in the certification requirement under the JDA. And so the certification is improper. If there are no further questions. Good. Baldock? I'm done. Okay. Thank you. Appreciate your arguments. Well done. Your excuse in the case is submitted.